John R. Baker, Appellee, v. Adelbert Brown, Appellant.

Gen. No. 40,154.

Former opinion filed October 18, 1938.
Later opinion filed January 14, 1939.

LESLIE E. SALTER, of Chicago, and ADELBERT BROWN, *pro se.*

JOHN M. LEE, of Chicago, for appellee; T. C. CONRAD, of Chicago, of counsel.

MR. JUSTICE JOHN J. SULLIVAN delivered the opinion of the court.

This is an appeal from a judgment for $6,419.07 entered by the circuit court of Cook county against de-

fendant, Adelbert Brown, based upon a foreign judgment rendered in the district court of Oklahoma county, State of Oklahoma. Plaintiff herein, John R. Baker, as trustee, was plaintiff in the suit in which the foreign judgment was entered and the defendants in that action were M. E. Durham, Gordon Stater and the defendant in the instant case, Adelbert Brown.

The only question presented for our determination is whether the trial court erred in giving full faith and credit to the foreign judgment.

The petition filed in the proceeding in which the foreign judgment was entered included 12 causes of action, the allegations of the statements of claim of each of which were identical except as to the names of the claimants, who were plaintiff's assignors, the amounts sought to be recovered upon their respective claims and the amounts of certain judgments, theretofore entered and later vacated, upon which their claims were based. Said petition alleged substantially that M. E. Durham, doing business as the Taxpayers' Association, had contracted with the parties named in the several counts of the petition to recover for them certain taxes which they had theretofore paid under protest, for a commission of 25 per cent in some instances and 33⅓ per cent in others; that Durham employed a law firm, the partnership of Brown & Stater, upon a fee basis of 11 per cent of the gross amount recovered, to bring suits for the refund of the taxes paid under protest; that certain refunds were procured but that the judgments under which said refunds were made were thereafter set aside by reason of fraud in their procurement and the taxpayers were compelled to pay to the county treasurer of Oklahoma county the full amount of the sums refunded.

The petition, after reciting the foregoing facts and incorporating therein the contracts and other written exhibits relied upon, alleged specifically that "the said

Brown & Stater received and took and still retain and refuse to pay to this plaintiff eleven per cent of the amount temporarily recovered by them." It was then alleged that there was due and owing to plaintiff for the use and benefit of the twelve taxpayer claimants "from the defendant, M. E. Durham, as an individual and as one doing business under the name of the Taxpayers Association, and from Adelbert Brown and Gordon Stater, both as individuals and as partners doing business under the name of Brown & Stater," the sum of $4,744.39 with interest at 6 per cent from January 20, 1930, until paid. This $4,744.39 represented as to some of the claimants 25 per cent and as to others 33⅓ per cent of the amount of the taxes recovered, which said taxpayer claimants had contracted to pay Durham and which the latter presumably received out of the money refunded as a result of the judgments which were later vacated. Eleven per cent of the gross amount of the foresaid judgments, or $2,061.64, was the amount specifically alleged to have been received and wrongfully retained by Brown. $6,419.07, the amount of the judgment entered in the case at bar against Brown, represented the original judgment for $4,744.39 entered against Brown in the Oklahoma court, accrued interest thereon and costs advanced by plaintiff in instituting this suit, less payments aggregating $375 made by Stater and a certain credit for $366.57.

Defendant, Brown, was served personally with summons in the Oklahoma proceeding and was defaulted for want of appearance. The judgment order entered in that case after finding "that Adelbert Brown and Gordon Stater as partners doing business under the firm name of Brown & Stater, *are liable to the plaintiff for 11% of the gross or total amount of money obtained from the County Treasurer of Oklahoma County for the 12 taxpayers herein involved,* under the original

journal entries in the case of *Abernathy v. Bonaparte,* . . . which were subsequently set aside, *which said 11% amounts to $2,061.64,* with interest at 6% from January 20th, 1930, until paid . . ., and that M. E. Durham and Adelbert Brown, jointly and severally are liable to the plaintiff for said same sum of $2,061.64, with interest as aforesaid, and that said M. E. Durham and Adelbert Brown, jointly and severally, are also liable to the plaintiff for the additional sum of $2,682.75, with interest at 6% from January 20th, 1930, until paid," ordered "that plaintiff, John R. Baker, as Trustee, do have and recover of and from the defendants, Brown & Stater, a co-partnership composed of Adelbert Brown and Gordon Stater, both of which were personally served with summons herein, the sum of $2,061.64 with interest at 6% from January 20th, 1930," and further ordered "that the plaintiff, John R. Baker, as Trustee, do have and recover said sum of $2,061.64, with interest at the rate of 6% per annum from January 20th, 1930, until paid, . . . of and from M. E. Durham and Adelbert Brown and each of them and that in addition to said sum of $2,061.64, with interest . . . plaintiff do have and recover of and from M. E. Durham and Adelbert Brown and each of them the additional sum of $2,682.75, with interest at 6% from January 20th, 1930, making the total amount to be recovered by plaintiff from M. E. Durham and Adelbert Brown, and each of them, the sum of $4,744.39 with interest at 6% from January 20th, 1930, until paid." (Italics ours.)

Defendant's contentions as stated in his brief are as follows: "The judgment rendered herein is based upon the foreign judgment of $4,744.39, which is the full amount Durham received, and not the eleven per cent which Brown and Stater received. This foreign judgment for $4,744.39 is void, being rendered for an

amount in excess of the scope of the pleadings and not responsive to the issues in the case.

"The foreign judgment is valid only insofar as it renders a judgment against Brown for $2,061.64, the eleven per cent paid to Brown and Stater. . . . This, however, is not the foreign judgment upon which judgment was rendered in the case at bar."

In support of his position that the foreign judgment should be given full faith and credit by the courts of this State, plaintiff maintains "(1) that the foreign court had jurisdiction of the person and of the subject matter; (2) that the foreign petition or declaration construed in its entirety does fully support the foreign judgment sued upon; and (3) that if said petition or declaration does not fully support said foreign judgment, the defect is not jurisdictional, constitutes error only, and can only be raised by a direct attack in the foreign court."

It is true that all of the statements of claim, as set forth in the several counts of plaintiff's petition filed in his action in the Oklahoma court, concluded with the general allegation that "there is now due, owing and unpaid to the plaintiff, John R. Baker, as trustee, for the use and benefit" of the respective claimants, "from the defendant, M. E. Durham as an individual and as one doing business under the name of The Taxpayers Association and from Adelbert Brown and Gordon Stater, both as individuals and as partners doing business under the name of Brown & Stater," various sums which in the aggregate amounted to $4,744.39, for which amount judgment was prayed with interest at 6 per cent from January 20, 1930, but it will be noted that such statements of claim alleged specifically that under the contract between Durham and Brown & Stater, all that Brown & Stater were to receive for conducting the litigation to recover the protested taxes was 11 per cent of the total amount of taxes recovered

for the several claimants and that "the said Brown & Stater received and took, and still retain and refuse to pay to this plaintiff and those for whom this plaintiff brings this suit, 11% of the amount temporarily recovered by them."

It should be further noted that that portion of the Oklahoma "Journal Entry of judgment" which ordered "that plaintiff John R. Baker, as Trustee, to have and recover from the defendants Brown & Stater, a copartnership composed of Adelbert Brown and Gordon Stater, both of whom were personally served with summons herein, the sum of $2,061.64, with interest at 6% from July 20th, 1930" was predicated upon the court's finding "that Adelbert Brown and Gordon Stater, as partners doing business under the firm name of Brown & Stater, are liable to the plaintiff for 11% of the gross or total amount of money obtained from the County Treasurer of Oklahoma County for the 12 taxpayers herein involved, under the original journal entries in the case of Abernathy v. Bonaparte . . ., which were subsequently set aside, which said 11% amounts to $2,061.64 with interest at 6% from January 20th, 1930, until paid."

As to the additional foreign judgment for $2,682.75, entered against Brown, there were no facts alleged in the petition upon which to base same. The amount of this additional judgment was added to $2,061.64, the amount for which judgment was first entered against Brown, making a total judgment against him of $4,744.39, for the recovery of which, with interest, charges and costs, the instant action was instituted, based upon the judgment for that amount entered in the Oklahoma court.

There were sufficient facts alleged in plaintiff's petition to support the judgment for $2,061.64 entered by the Oklahoma court against the partnership of Brown & Stater and against Brown and Stater, individually, and

an action founded upon that judgment would be entitled to full faith and credit. However, as to the judgment for $4,744.39 entered against Brown in the Oklahoma proceeding, we agree with the defendant's contention that it is void, and, therefore, not entitled in the courts of this State to the "full faith and credit" guaranteed by sec. 1 of Art. IV of the Constitution of the United States.

As heretofore shown, all the money that plaintiff in the Oklahoma action claimed and alleged that Brown and his partner, Stater, or Brown or Stater received and wrongfully withheld was $2,061.64 or 11 per cent of the total amount of the taxes refunded and later ordered returned. This represented the portion received by Brown & Stater of the proceeds of the judgments for the tax refunds, which judgments were procured by them and later vacated. No fact is averred in the petition filed in the action in the Oklahoma court from which it could be even assumed or inferred that Brown was liable to the plaintiff there or to the claimants in whose behalf plaintiff instituted that action in any amount except as shown by the facts specifically alleged in said petition that "the said Brown & Stater took and still retain and refuse to pay to this plaintiff and those for whom this plaintiff brings this suit, 11% of the amount temporarily recovered by them." This allegation fixed the extent of defendant's liability, regardless of general averments, conclusions or the general prayer for relief contained in the petition. "It is a well-settled rule of pleading that a specific statement of facts will always control a general statement, whether that general statement be or be not regarded as a mere conclusion of law . . . and that . . . 'where both general and specific allegations are made respecting the same matter, the latter control.'" (*Whitaker v. Crowder State Bank,* 26 Okla. 796, 110 Pac. 776.)

"It is a general rule that specific averments in a pleading must be given precedence over general averments, inasmuch as the general allegations are to be deemed explained, limited, and controlled by the special allegations." 21 R. C. L. 450, sec. 14, 104 Okla. 57, 230 Pac. 268. The facts stated in the petition fixed the limit of relief that could be granted in the Oklahoma suit and no valid judgment could have been entered therein that went beyond the relief to which plaintiff was entitled on proof of the allegations made. (*Standard Oil Co. v. Missouri,* 224 U. S. 270.)

But it is argued by plaintiff that "if said petition or declaration does not fully support said foreign judgment the defect is not jurisdictional, constitutes error only, and can only be raised by a direct attack in the foreign court." In this contention plaintiff assumes a judgment predicated upon a petition or declaration that is merely defective in some respect. We are confronted here, however, with a judgment that is based upon issues not made by the pleadings, and the authorities generally hold such a judgment to be *coram non judice* and void. The Oklahoma judgment under consideration not only goes beyond the issue presented but is strictly at variance with the facts pleaded in support of the issue that actually was raised. The only issue raised by the petition as to Brown was whether he received and wrongfully withheld from plaintiff 11% of the proceeds of the judgments procured by him and his partner, which were later vacated. Plaintiff alleged that the amount so received was $2,061.64 and judgment entered in excess of that amount plus proper interest must be held to be a nullity.

In *Standard Sav. & L. Ass'n v. Anthony Wholesale Grocery Co.,* 62 Okla. 242, 162 Pac. 451, L. R. A. 1917 D 1029, where a judgment which passed upon matters entirely outside the issue raised by the pleadings was held invalid, the court said at p. 453 of the Pacific report:

"The question for our determination is, Is the personal money judgment against the defendant Nannie A. Circle void or merely voidable? This court, in the case of *Jefferson v. Gallagher et al.,* 150 Pac. 1071 . . . held:

" 'The first fundamental requisite to the validity of a judgment is that it should have been rendered by a court having jurisdiction, for without jurisdiction the courts can do nothing, and a judgment rendered without jurisdiction is a mere nullity. The jurisdiction required is of three sorts: (1) Jurisdiction of the parties; (2) jurisdiction of the general subject-matter; (3) jurisdiction of the particular matter which the judgment professes to decide.'

"And to the same effect is Black on Judgments (2d Ed.) vol. 1, § 242, which is as follows:

" 'Besides jurisdiction of the person of the defendant and of the general subject-matter of the action, it is necessary to the validity of a judgment that the court should have had jurisdiction of the precise question which its judgment assumes to grant. In other words, a judgment which passes upon matters entirely outside the issue raised in the record is so far invalid. Jurisdiction may be defined to be the right to adjudicate concerning the subject-matter in the given case. To constitute this there are three essentials: First, the court must have cognizance of the class of cases to which the one to be adjudged belongs; second, the proper parties must be present; and third, the point decided must be, in substance and effect, within the issue. That a court cannot go out of its appointed sphere, and that its action is void with respect to persons who are strangers to its proceedings, are propositions established by a multitude of authorities. A defect in a judgment arising from the fact that the matter decided was not embraced within the issue has not, it would seem, received much judicial consideration. And

yet I cannot doubt that, upon general principles, such a defect must avoid a judgment. . . . The invalidity of such a decree does not proceed from any mere arbitrary rule, but it rests entirely on the ground of common justice. A judgment upon a matter outside of the issue must, of necessity, be altogether arbitrary and unjust, as it concludes a point upon which the parties have not been heard. And it is upon this very ground that the parties have been heard, or have had the opportunity of a hearing, that the law gives so conclusive an effect to matters adjudicated.'

"Also, this court, in the case of *Rogers, County Treasurer v. Bass & Harbour,* 150 Pac. 706, . . . held:

" 'A judgment which is entirely outside of any issue made by the pleadings or the evidence in the case is a nullity'—following the earlier case of *Anglea v. McMaster et al.,* 17 Okl. 501, 87 Pac. 660, wherein the court held:

" 'A judgment which is entirely outside of the issues in the case, and upon a matter not submitted to the court for its determination, is a nullity and may be vacated and set aside at any time, on motion of a party, or any person affected thereby.' ' "

Where the foreign judgment was entered by default on such facts as were alleged in the petition, as heretofore shown, there is even greater reason for the courts of a sister State to refuse to enforce it. Defendant, Brown, who was in default in the Oklahoma proceeding, admitted therein only the facts pleaded in the petition. (*Farris v. Henderson,* 1 Okla. 384, 33 Pac. 380.) The defendant in default is willing that the plaintiff in the particular proceeding be granted relief where the facts pleaded in such cause warrants, but no intendment can be indulged that he is willing that other relief be granted. (*White v. McFarland,* 148 Mo. App. 338, 128 S. W. 23; *Northern Trust Co. v. Albert Lea College,*

68 Minn. 112, 71 N. W. 9.) "Facts not alleged, though proved, cannot form the basis of a judgment by default, the only allegations of the petition fixed by the default being those traversable, and issues cannot be joined on mere conclusions of law." *LeClair v. Calls Him,* 106 Okla. 247, 233 Pac. 1087. (See also *Choi v. Turk,* 55 Okla. 499, 154 Pac. 1000.)

It is the rule generally, as well as in Oklahoma, that a judgment by default for an amount greater than that to which plaintiff is entitled to under the pleadings is void. "A judgment of the court beyond the scope of the pleadings and beyond the scope of the issues then proper is a nullity and not binding upon the parties to the action." *Nero v. Brooks,* 116 Okla. 279, 244 Pac. 588. (Also to same effect is *Holshouser v. Holshouser,* 166 Okla. 45, 26 P. (2d) 189.) It has been repeatedly held that where a foreign judgment is as fatally defective as that here in controversy, the question of such fatal defect may be raised to defeat such foreign judgment when an action based on same is brought in a sister State.

In holding that a judgment entered in another State may be questioned as to the existence of facts recited therein which were necessary to give the court jurisdiction, our Supreme Court in *Van Dyke v. Illinois Commercial Men's Ass'n,* 358 Ill. 458, said at pp. 461 and 462:

"We have held that the record of a judgment rendered in another State may be questioned as to the existence of facts recited therein which were necessary to give the court jurisdiction. If it is made to appear that such facts did not exist the judgment will be held to be a nullity. It may be shown that there was a want of jurisdiction either of the subject matter or of the person. (*Pembleton v. Illinois Commercial Men's Ass'n,* 289 Ill. 99; *Field v. Field,* 215 id. 496; *Forsyth v. Barnes,* 228 id. 326.) This same rule has been laid

down in *Thompson v. Whitman,* 18 Wall. 457, *Simmons v. Saul,* 138 U. S. 439, and *National Exchange Bank v. Wiley,* 195 id. 257.''

In *Pembleton v. Illinois Commercial Men's Ass'n,* 289 Ill. 99, it was said at p. 103: "It has been held by the Federal courts that the record of a judgment rendered in another State may be contradicted as to the facts necessary to give the court jurisdiction, and if it be shown that such facts did not exist the record will be a nullity, notwithstanding it may recite that they did exist; that want of jurisdiction may be shown either as to the subject matter or the person.''

In the case at bar plaintiff relies on his Oklahoma judgment for $4,744.39. Since this judgment is not responsive to the pleadings and is at variance with the facts pleaded in the cause in which it was rendered it must be held to be void. The fact that judgment for the lesser amount of $2,061.64, less certain credits, was properly entered in the foreign proceeding and could have been sued upon in this State, does not to any extent validate the void judgment for $4,744.39. In *Reynolds v. Stockton,* 140 U. S. 254, 35 L. Ed. 464; the facts, briefly stated, were as follows:

"A New Jersey insurance company reinsured the risks of a New York Company, took its assets, and assumed its liability. After the failure of the New Jersey company and the appointment of a receiver in New Jersey, and an ancillary receiver in New York, suit was brought against the latter in New York, by the holders of policies in the old New York company, seeking only to subject to their claims $100,000 of securities deposited by that company with the superintendent of the insurance department. Judgment was rendered against the receiver and the New Jersey company for a million dollars.''

In holding in that case that a judgment rendered in the absence of defendant and not responsive to the

issues presented by the pleadings is not entitled to full faith and credit in a sister State, the United States Supreme Court said in 140 U. S. at pp. 266, 268, 269:

"In the opinion of the Court of Errors and Appeals, the case of *Munday v. Vail,* 34 N. J. Law, 418, is cited. In that case, the proposition stated in the syllabus, and which is fully sustained by the opinion, is, that 'a decree in equity, which is entirely aside of the issue in the record, is invalid, and will be treated as a nullity, even in a collateral proceeding.' . . . We quote from the opinion: 'The inquiry is, Had the court jurisdiction to the extent claimed? Jurisdiction may be defined to be the right to adjudicate concerning the subject matter in the given case. To constitute this there are three essentials: *First,* the court must have cognizance of the class of cases to which the one to be adjudged belongs; *second,* the proper parties must be present; and *third,* the point decided must be, in substance and effect, within the issue. That a court cannot go out of its appointed sphere, and that its action is void with respect to persons who are strangers to its proceedings, are propositions established by a multitude of authorities. A defect in a judgment arising from the fact that the matter decided was not embraced within the issue has not, it would seem, received much judicial consideration. And yet I cannot doubt that, upon general principles, such a defect must avoid a judgment. It is impossible to concede that because A and B are parties to a suit, a court can decide any matter in which they are interested, whether such matter be involved in the pending litigation or not. Persons by becoming suitors do not place themselves for all purposes under the control of the court, and it is only over these particular interests which they choose to draw in question, that a power of judicial decision arises.' And again: 'A judgment upon a matter outside of the issue must, of necessity, be altogether

arbitrary and unjust, as it concludes a point upon which the parties have not been heard. And it is upon this very ground that the parties have been heard, or have had the opportunity of a hearing, that the law gives so conclusive an effect to matters adjudicated. And this is the principal reason why judgments become estoppels. But records or judgments are not estoppels with reference to every matter contained in them. They have such efficacy only with respect to the substance of the controversy and its essential concomitants. Thus, Lord Coke, treating of this doctrine says: 'A matter alleged that is neither traversable nor material shall not estop.' "

We are impelled to hold that the foreign judgment for $4,744.39 is not entitled to full faith and credit and cannot be the basis of a judgment in this State.

For the reasons indicated herein the judgment of the circuit court is reversed and judgment is entered here in favor of defendant and against plaintiff.

*Reversed and judgment here for defendant.*

FRIEND, P. J., and SCANLAN, J., concur.