2006 OK 30

**Lora Gail RAY, Plaintiff–Appellee,**

v.

**Kenneth Allen RAY, Defendant–Appellant.**

**No. 101,392.**

Supreme Court of Oklahoma.

May 9, 2006.

Susan D. Williams, Susan D. Williams, P.C., Watonga, OK, for Appellee.

Paul K. Woodward, Traynor, Long, Wynne & Woodward, P.C., Enid, OK, for Appellant.[1]

OPALA, J.

¶ 1 The dispositive issue on certiorari is whether the trial court erred in its award of support alimony to the wife. We answer in the affirmative.

## I

### THE ANATOMY OF LITIGATION

¶ 2 Kenneth Allen Ray (husband) and Lora Gail Ray (wife) were married on 18 June 2002. The parties separated 21 months later and wife filed for divorce on 31 March 2004. No children were born of this union.

¶ 3 The trial court explained that the dissolution proceedings would be conducted as a "quasi summary proceeding" in which counsel would be allowed to ask leading questions. The parties were the only witnesses. No exhibits were offered or admitted.

¶ 4 According to wife's testimony, she was 19 years old at the time of the marriage. Her husband was 37 years old at the time of trial. She drove husband's pickup truck during her senior year of high school. Before the marriage she owned jointly with her mother a 1989 Chevrolet Silverado pickup truck that had been damaged in an accident.[2] Wife testified she kept the majority of the wedding gifts, as well as the wedding ring, and has all the personal property from the marriage she wishes to keep. When she moved out of the home in March 2004 there may have been $1,600 in their bank account. She withdrew the majority of that amount when she left, leaving a balance of about $150. She worked during the marriage, but quit for a 6–month period to go to school, although she "never did." Whenever she would mention to her husband anything about college he "would really say no." According to wife, she gave up an opportunity to further her education when she got married after graduating from high school. She now wants to attend Redlands Community College in El Reno and needs funds to do so. At the time of trial she was working for $5.30 an hour. For the last three months before trial she had been cohabiting with a new male provider who lives approximately two blocks from her place of employment and she has driven his truck to work "a few times."

¶ 5 Husband testified he owns a home that he bought in 1991, which has a 30–year mortgage. He also owns a 1999 Ford 250 pickup truck that was purchased 3 years before the marriage. Wife drove his pickup truck while they were dating during her senior year of high school. He kept several items of personalty that were purchased during the marriage for the home.[3] When wife withdrew funds from their bank account in March 2004, she left an amount insufficient to cover outstanding checks that had been written earlier. At the time he had not made the final payment due on the 1999 Ford 250 pickup truck. There was also a balance of $900 owed on a bank loan he incurred shortly

1. Identified herein are only those counsel for the parties whose names appear on the certiorari briefs.

2. Wife testified that after the accident the insurance company paid $231 for the salvage value of the 1989 Chevrolet Silverado pickup truck.

3. Husband kept several items that were purchased during the marriage—a computer, a computer desk, a washing machine, a dishwasher, a treadmill, an air conditioner, and some small heaters.

after the marriage. He had paid these debts by the time of trial. He encouraged wife to go to college, but she had no interest in attending. He explained that because of his veteran status she would have been eligible for a student grant or for a low-interest loan. There was a scholarship program offered through his company. He stated that wife's parents had also offered to help defray her school expenses.

¶ 6 The trial court dissolved the marital bond, divided and set aside separate property of the spouses,[4] and awarded the wife $9,000 in support alimony payable in 15 months at a rate of $1,000 monthly for the first three months and $500 monthly for the next year.

¶ 7 Husband's appeal seeks only our review of the support alimony award. He argues that the award was neither reasonable nor supported by the evidence. The Court of Civil Appeals affirmed. One panel member rested his dissenting view on the lack of record proof to demonstrate **wife's need** for support alimony and **husband's ability to pay it.** We are in accord with the dissent's assessment of the record.

## II

### THE ARGUMENTS ON CERTIORARI

¶ 8 Husband argues the trial court's support alimony award is not supported by the evidence. He claims COCA misallocated the burden of proof and persuasion for an award of support alimony. According to Husband, the appellant/obligor's burden on appeal is to produce a record that shows the evidence does not provide support for an alimony award, rather than to point to some evidence of obligee's need and obligor's ability to pay.

¶ 9 Wife asserts the support alimony award is warranted by the evidence and is reasonable in its quantum and payment schedule.

## III

### THE LAW'S DEMONSTRATED–NEED STANDARD OF REVIEW FOR ALIMONY AWARD

¶ 10 A suit for divorce is one of equitable cognizance. The trial court's decree will be left undisturbed unless found to be clearly contrary to the weight of the evidence.[5] Oklahoma's extant jurisprudence defines support alimony[6] as a need-based concept.[7] Its purpose is to cushion the economic impact of post-marriage transition and a spouse's readjustment to gainful employment. **Demonstrated need is established by the totality of proof of the obligee's financial condition.**[8] Factors to be considered include: a demonstrated need for alimony during a reasonable post-divorce rehabilitative readjustment period; the parties' station in life; the length of the marriage and the ages of the spouses; the earning capacity of the parties as well as their physical condition and financial means; the spouses' accustomed style of living; evidence of a spouse's own income-producing capacity and

---

4. The trial court awarded the parties as their separate property all personal property acquired prior to the marriage, all separate property acquired since the date of separation, and all marital property currently in their possession. The husband was awarded the 1999 Ford 250 pickup truck subject to any indebtedness that burdens it.

5. *Younge v. Younge,* 2002 OK 12, ¶¶ 14–15, 41 P.3d 966, 972; *McLaughlin v. McLaughlin,* 1999 OK 34, ¶ 13, 979 P.2d 257, 260–61; *Johnson v. Johnson,* 1983 OK 117, ¶ 23, 674 P.2d 539, 547.

6. In BLACK'S LAW DICTIONARY 67 (5th ed.1979), it is said that the word "alimony" comes from the Latin *"alimonia,"* meaning sustenance, and denotes "the sustenance or support of the wife by her divorced husband." It "stems from the com-

mon-law right of the wife to support from her husband." *Funnell v. Funnell,* 1978 OK 69, ¶ 13, 584 P.2d 1319, 1322. In *Poloke v. Poloke,* 1913 OK 149, ¶ 4, 130 P. 535, 37 Okl. 70, the court defines alimony as "an allowance which the husband pays, by order of the court, to his wife for her maintenance while living separate from him, where no suit is brought for divorce, or during the pendency of a divorce suit or after the divorce is granted."

7. Alimony is awarded based on demonstrated need. *Younge v. Younge, supra* note 5, at ¶ 14, 971; *Johnson v. Johnson, supra* note 5 at ¶ 23, 546; *Kirkland v. Kirkland,* 1971 OK 98, ¶¶ 25, 27, 488 P.2d 1222, 1227.

8. *Id.*

the time needed for the post-divorce transition.[9]

## A.

### The Alimony Seeker Has The Burden of Demonstrating A Need for Support Alimony

■ ¶ 11 The seeker of support alimony carries the burden of affirmatively demonstrating the need for excess funds to cushion the economic transition from marital dependency to employment.[10] The demonstrated-need standard of today is different from that of the early nineteenth century. **Then** (here and in England) **a wife was not required to show a need for spousal support.**[11] That need was legally presumed. The ecclesiastical courts could grant only divorces *a mensa et thoro* (from bed and board, known to us as legal separation).[12] In a legal separation, the husband had control of the wife's property and the law imposed upon him a duty to continue supporting her. A divorce *a vinculo matrimonii* (from the bonds of matrimony

or an absolute divorce) was allowed only by special act of Parliament.[13] Because today a wife **has full control of her separate property and can easily obtain an absolute divorce,** the earlier rationale that ascribed to the husband a continuing duty to provide support is no longer a viable legal basis for post-divorce support alimony.

## B.

### The Appellant Has The Burden Of Producing A Record Sufficient To Show Error

■ ¶ 12 The appellant bears the undivided responsibility for producing to a court of review a record [14] that will adequately demonstrate error in the trial court's decree because the findings are contrary to the weight of evidence.[15] The appealing party must include in the record for appeal all materials necessary for corrective relief.[16] Legal error will not be presumed from a silent record.[17]

---

9. A woman's financial dependence on marriage is no longer **legally presumed.** Its presence must be **proved** by the clear weight of the evidence. *Younge v. Younge, supra* note 5, at ¶ 14, 971; *McLaughlin v. McLaughlin, supra* note 5, at ¶ 13, 260–61.

10. *Younge v. Younge, supra* note 5, at ¶ 14, 971; *Johnson v. Johnson, supra* note 5 at ¶ 23, 546; *Kirkland v. Kirkland, supra* note 7, at ¶¶ 25, 27, 1227.

11. June Carbone, *The Futility of Coherence: The ALI's Principles of the Law,* 4 J.L. & Fam. Stud. 43, 46, citing Vernier & Hurlbut, *The Historical Background of Alimony Law and Its Present Statutory Structure,* 6 Law & Contemp. Probs. 197 (1939).

12. Neither the three common-law courts nor the chancery had power to dissolve a marriage (or grant a separate maintenance decree). A divorce *a mensa et thoro* (from "bed and board") could be procured from ecclesiastical courts; a divorce *a vinculo matrimonii* ("from the bond of matrimony", which means a marriage dissolution) might be obtained only by a special act of the British Parliament. Divorce jurisdiction was transferred in 1857 from ecclesiastical tribunals to the civil court system by the Matrimonial Causes Act of 1857, 20 & 21 Vict. c. 85. See *Reaves v. Reaves,* 1905 OK 32, ¶ 14, 82 P. 490, 494, 15 Okl. 240; *Irwin v. Irwin,* 1894 OK 29, ¶ 10, 37 P. 548, 557 (Scott, J., dissenting); 15 W.

Holdsworth, A History of English Law 205–06 (1965); Homer H. Clark, Jr., The Law of Domestic Relations in the United States § 16.1, at 619 (2d ed.1988); Max Radin, Anglo American Legal History § 269, at 512–513 (1936).

13. *Id.*

14. *Hulsey v. Mid–America Preferred Ins. Co.,* 1989 OK 107, ¶ 7, 777 P.2d 932, 936 (citing *Eckel v. Adair,* 1984 OK 86, ¶ 9, 698 P.2d 921, 924); *Hamid v. Sew Original,* 1982 OK 46, ¶ 7, 645 P.2d 496, 497.

15. A reviewing court will not disturb a nisi prius decision in equity absent an abuse of discretion or a finding that it is clearly contrary to the weight of evidence. *Johnson v. Johnson, supra* note 5 at ¶ 15, at 544; *Kiddie v. Kiddie,* 1977 OK 69, ¶ 3, 563 P.2d 139, 140–41; *Peters v. Peters,* 1975 OK 114, ¶ 9, 539 P.2d 26, 27.

16. An appellant bears total responsibility for including in the appellate record all materials necessary for corrective relief. *Hulsey v. Mid–America Preferred Ins. Co., supra* note 14, at ¶ 7, 936; *Hamid v. Sew Original, supra* note 14, at ¶ 7, 497.

17. *Johnson v. Johnson, supra* note 5 at ¶ 24, at 546 (citing *Hamid v. Sew Original, supra* note 14, at ¶ 6, 645 P.2d at 497); *Chamberlin v. Chamberlin,* 1986 OK 30 ¶ 4, 720 P.2d 721, 723–24.

## IV

### THERE IS NO RECORD SUPPORT FOR THE ALIMONY AWARD

¶ 13 The task before us today is to determine whether the trial court's support alimony award has a sufficient basis in the record.

¶ 14 The trial court's "quasi summary" dissolution hearing produced a paucity of facts serving as a basis for the alimony award. The wife was 19 years old when she married husband who was 37 years old at the time of divorce. They lived together in marriage for 21 months and had no children. She withdrew over $1,000 from their bank account when she moved out and was allowed to drive husband's pickup truck. She had a job earning $5.30 an hour and began cohabiting with a new male provider three months before trial. The husband owns a 1999 Ford 250 pickup truck as well as a home of indeterminate value. He has a job. Based on these facts, wife was awarded $9,000 in support alimony, payable over a 15–month period, to help her acquire an education and to purchase a vehicle. **There is here no evidence of** (a) the amount of money wife reasonably needs for readjustment of lifestyle to a new economic situation, (b) her income-producing capacity, such as the number of hours she works per week and her monthly income; (c) her monthly expenses and future living plans and expenses, (d) her physical condition, (e) the cost of her desired education, (f) whether her station in life or standard of living has changed since the separation; (g) how much her new cohabiting provider contributes to her monthly needs. **Neither is there any evidence of** (a) the husband's ability to pay support alimony, (b) the value of his home, (c) his net worth, (d) his physical condition, (e) his living standard based on monthly income and expenses.[18]

¶ 15 We hold the record tendered for our review is devoid of critical proof necessary for a determination of support alimony based on demonstrated need. The $9,000 alimony award to wife is clearly unsupported by the evidence. The probative deficiency requires a reversal of the alimony award and another expensive post-appeal proceeding. The added cost could have been saved by eliciting an adequate record to serve as a basis for the decree's alimony award.[19]

## V

### SUMMARY

¶ 16 There is an **absence of proof in this record** (a) of wife's need for support alimony during a reasonable period needed for her rehabilitative post-matrimonial economic readjustment as well as (b) of husband's ability to pay post-divorce spousal support. Because wife has failed to meet, before the trial court, her burden of affirmatively demonstrating the amount of needed support, if any, during the period of her economic readjustment, the trial court's alimony award is reversed and the cause remanded for further proceedings to be consistent with today's pronouncement.

¶ 17 The Court of Civil Appeals' opinion is vacated; the trial court's support alimony award is reversed and the cause remanded with directions.

¶ 18 WATT, C.J., WINCHESTER, V.C.J., LAVENDER, HARGRAVE, OPALA, EDMONDSON, TAYLOR, and COLBERT, JJ., concur.

¶ 19 KAUGER, J., dissents.

¶ 20 KAUGER, J., dissenting.

I would deny certiorari as improvidently granted.

---

18. We assume that a judge sitting in a small community is familiar with the status of many people in that community, **but there is no substitute in law for record proof.**

19. The added expense of a post-appeal proceeding can be saved by early post-reversal settlement.